```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOE HAND PROMOTIONS, INC., as
Broadcast Licensee of the November 21, 2015
Cotto/Canelo Program,

                    Plaintiff,                                MEMORANDUM AND ORDER
                                                              18-CV-85 (ILG) (SJB)
      - against -

JOSE A. BERNAL, individually, and as officer,
director, shareholder, and/or principal of
EL SONADOR CAFE RESTAURANT, INC.,
d/b/a EL SONADOR CAFE RESTAURANT,

and

EL SONADOR CAFE RESTAURANT, INC.
d/b/a EL SONADOR CAFE RESTAURANT,

                    Defendants.
-----------------------------------------------------------x
```
GLASSER, Senior United States District Judge:

Plaintiff Joe Hand Promotions, Inc. commenced this action pursuant to 47 U.S.C. §§ 553(a)(1) and 605(a) against El Sonador Cafe Restaurant, Inc. d/b/a El Sonador Cafe Restaurant (**"El Sonador"**) and Jose A. Bernal, individually and as officer, director, shareholder and/or principal of El Sonador (**"Bernal"**) on January 5, 2018. (ECF No. 1 (**"Compl."**)). El Sonador and Bernal were served on February 8, 2018 and February 10, 2018, respectively. (ECF Nos. 7, 8). After Defendants failed to file their response, Plaintiff requested that default be entered. (ECF No. 11). The Clerk of the Court entered default on April 19, 2018. (ECF No. 12). Pending before the Court is Plaintiff's motion for default judgment. (ECF No. 16).

## BACKGROUND

This case involves the unauthorized exhibition of a televised boxing match on the night of November 21, 2015 and in the early morning hours of November 22, 2015 (the

1

**"Cotto/Canelo Program"** or the **"Program"**). By contract, Plaintiff was granted the right to distribute the Cotto/Canelo Program, including all undercard bouts and the entire television broadcast. (Compl. ¶ 20). Pursuant to the contract, Plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to publicly exhibit the Program to their patrons. (*Id*. ¶ 21). The broadcast was transmitted via satellite signal to various cable and satellite systems. (*Id.* ¶ 20).

According to the complaint, on the night of the fight, "Defendants and/or their agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled said satellite signal" and exhibited the Program at their restaurant for commercial advantage. (*Id*. ¶¶ 14-15, 23). Plaintiff alleges that Bernal exercised control over the premises, was present at the establishment when the Cotto/Canelo Program was being exhibited, and authorized the exhibition. (*Id.* ¶¶ 8, 10-12).

According to Plaintiff, satellite signals may be illegally intercepted in a number of ways, such as:

> Splicing an additional coaxial cable line or redirecting a wireless signal, from an adjacent residence, into a business establishment, commercial misuse of cable or satellite by registering same as a residence when it is in fact[] a business or taking a lawfully obtained box or satellite receiver from a private residence and into a business. Each of these methods would allow Defendants to access the Program unlawfully. In addition, emerging technologies, such as broadband or internet broadcast as well as 'slingbox' technology, which allows a consumer to literally sling programming from their personal home cable or satellite systems and into their computers, can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world.

(*Id*. ¶ 24). The complaint alleges that, "[w]hile Plaintiff is unable to determine the precise manner in which Defendants obtained the Program, it is logical to conclude that Defendants must have either used an illegal satellite receiver, misrepresented their business establishment as a

residence or engaged in 'mirroring' by taking a legitimate receiver from their home to their business establishment in order to intercept Plaintiff's Program." (*Id.*).

## DISCUSSION

### I. Legal Standards

1. <u>Default Judgment</u>

"A default is an admission of all well-pleaded allegations against the defaulting party." *Natale v. Country Ford Ltd.*, No. 10-CV-4128, 2014 WL 4537501, at *3 (E.D.N.Y. Aug. 20, 2014) (alterations omitted) (quoting *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "Additionally, a plaintiff is entitled to all reasonable inferences from the evidence it offers." *CA, Inc. v. Network Solutions Provider, Inc.*, No. 17-CV-3623, 2018 WL 6834472, at *1 (E.D.N.Y. Dec. 28, 2018) (quoting *Natale*, 2014 WL 4537501, at *3). "In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim." *Id.* (quoting *United States Securities and Exchange Commission v. Coronati*, No. 16-CV-2022, 2016 WL 6462240, at *1 (E.D.N.Y. Oct. 14, 2016)). "However, 'unlike allegations pertaining to liability, allegations of damages are not deemed admitted in the context of a default judgment and the damages sought are not automatically awarded.' " *Id.* (quoting *Coronati*, 2016 WL 6462240, at *2). "The Court must examine whether the movant has provided adequate support for the requested relief … by an inquest hearing or on papers." *Id.* (quoting *Coronati*, 2016 WL 6462240, at *2). Where the plaintiff files "reasonably detailed declarations and exhibits pertaining to the damages incurred" and the defendant fails to make an appearance, damages may be calculated without an evidentiary hearing. *Joseph v. Excellence Auto Trade LLC*, No. 16-CV-1534, 2017 WL 1157178, at *6 (E.D.N.Y. Feb. 10, 2017) (quoting

*La Barbera v. Federal Metal & Glass Corp.*, 666 F.Supp.2d 341, 349 (E.D.N.Y. 2009)), *report and recommendation adopted*, 2017 WL 1154999 (E.D.N.Y. Mar. 27, 2017).

    2.    <u>Communications Act of 1934</u>

This case arises under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* Plaintiff brought claims under two provisions of this statute: § 553(a)(1) and § 605(a). Section 553(a)(1) provides: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) provides, in relevant part: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." As used in § 605(a), the term "radio communication" includes any satellite transmission, *see Garden City Boxing Club, Inc. v. La Casa De Santacruz Corp.*, No. 06-CV-4832, 2007 WL 2667448, at *4 (E.D.N.Y. Sept. 6, 2007); *Entertainment by J&J, Inc. v. Mama Zee Restaurant & Catering Services, Inc.*, No. 01-CV-3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002), as well as "[t]he continued transmission of [satellite] signals via cable after their receipt at the headend of a cable television system," *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131 (2d Cir. 1996), *cert. denied*, 519 U.S. 929 (1996); *see also Mama Zee*, 2002 WL 2022522, at *2 ("Section 605(a) … has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio communication").

The same conduct by a defendant may violate both § 553(a)(1) and § 605(a). *See International Cablevision*, 75 F.3d at 133. In such cases, damages should only be awarded pursuant to § 605(a). *See J & J Sports Productions, Inc. v. El Sonador Café Restaurant Inc.*, No.

17-CV-3357, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017); *Kingvision Pay-Per-View, Ltd. v. Castillo Restaurant Corp.*, No. 06-CV-617, 2007 WL 841804, at *3 (E.D.N.Y. Jan. 16, 2007). Accordingly, where liability is established under § 605(a), it is unnecessary to inquire whether defendants may also be liable under § 553(a)(1). *See El Sonador*, 2017 WL 6397731, at *2; *Castillo*, 2007 WL 841804, at *3.

**II. Liability**

1. <u>El Sonador</u>

Plaintiff has sufficiently pled a valid claim for relief against Defendant El Sonador under § 605. The well-pleaded allegations in the complaint, deemed admitted by virtue of Defendants' default, establish that El Sonador and/or its agents, acting without authorization, intercepted a satellite-borne broadcast—either by intercepting the satellite signal directly or intercepting a cable transmission that originated as a satellite signal—and displayed it in their restaurant on November 21 and 22, 2015. (Compl. ¶¶ 23-24).

It is true that the specific means by which El Sonador pirated the Program are unknown, and, without the benefit of discovery, likely unknowable. (Compl. ¶ 24). But any one of the various technologies by which JHP's satellite broadcast could have been intercepted is sufficient to establish liability. *See G & G Closed Circuit Events, LLC v. Gonzalez*, No. 14-CV-5334, 2015 WL 5561214, at *1 (E.D.N.Y. Aug. 13, 2015) (holding that plaintiff's complaint adequately alleged a violation of section 605(a) where "plaintiff allege[d] that defendant may have used one of the following methods to intercept the satellite broadcast: use of a decryption device such as a 'black box' to decode the satellite signal, misrepresentation of a commercial establishment as a residence to obtain a lower price, use of an illegal cable drop or splice from an adjacent residence, or an illegal purchase of satellite authorization codes"), *report and recommendation*

5

*adopted*, 2015 WL 5561224 (E.D.N.Y. Sept. 18, 2015); *Zuffa, LLC v. Al-Shaikh*, No. 10-CV-85, 2011 WL 1539878, at *5 (S.D. Ala. Apr. 21, 2011) ("[T]he Court elects to give Plaintiff the benefit of the doubt and not fault Plaintiff for failing to plead the particular manner of interception since this may be exclusively in Defendants' knowledge"); *Kingvision Pay-Per-View Ltd. v. Cardona*, No. 03-CV-3839, 2004 WL 1490224, at *2 (S.D.N.Y. Jun. 30, 2004). The fact that the Cotto/Canelo Program was exhibited in a commercial establishment, one which undisputedly did not pay a licensing fee, is sufficient to invoke the doctrine of *res ipsa loquitur*. Plainly, El Sonador must have intercepted JHP's satellite broadcast in a manner proscribed under § 605(a).

2. <u>Bernal</u>

In addition, Plaintiff has established that Bernal is liable in his individual capacity as an officer, director, shareholder, or principal of El Sonador. "To establish a violation of 47 U.S.C. § 605(a) by an individual defendant, plaintiff must show that the individual defendant 'authorized' the violations set forth in the complaint." *J & J Sports Productions, Inc. v. Right Brain Restaurant, Inc.*, No. 17-CV-1191, 2017 WL 4535928, at *3 (E.D.N.Y. Oct. 10, 2017) (quoting *J & J Sports Productions, Inc. v. Benson*, No. 06-CV-1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007)). Plaintiff's complaint expressly alleges that Bernal exercised control over the premises, was present during the exhibition, and authorized the exhibition. (Compl. ¶¶ 8, 10-12).

Therefore, Plaintiff has established that both Defendants are liable under § 605(a).

**III.   Remedies**

1.   <u>Remedies available under § 605(e)(3)</u>

A plaintiff who prevails in an action brought under § 605(a) is entitled to three forms of relief. The Court "(i) may grant temporary and final injunctions on such terms as it may deem

reasonable to prevent or restrain violations of [§ 605(a)]; (ii) may award damages … ; and (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees . . . ." 47 U.S.C. § 605(e)(3)(B). Although JHP prayed for injunctive relief in its complaint (Compl. ¶¶ 36-40), it did not request such relief in its motion for default judgment (ECF No. 16-1, at 16), and its request for injunctive relief is therefore deemed abandoned, *see Trustees of Cement Masons' Local 780 Fringe Benefit Funds v. J.M.R. Concrete Corp.*, 2018 WL 1115134, at *1 n. 1 (E.D.N.Y. Feb. 7, 2018). Accordingly, the Court need only consider damages under § 605(e)(3)(B)(ii) and costs and attorneys' fees under § 605(e)(3)(B)(iii).

2. <u>Damages</u>

Section 605(e)(3)(C)(i) authorizes a prevailing plaintiff to elect between statutory and actual damages. Plaintiff has elected for statutory damages pursuant to § 605(e)(3)(C)(i)(II), which provides that "the party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." In addition, Plaintiff seeks enhanced damages pursuant to § 605(e)(3)(C)(ii), which authorizes the Court to impose damages in an amount not exceeding $100,000 per violation, if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." "Courts have interpreted the showing of an event on a single night as one violation" for purposes of statutory and enhanced damages. *El Sonador*, 2017 WL 6397731, at *3 (quoting *J & J Sports Production, Inc v. McAdam*, No. 14-CV-5461, 2015 WL 8483362, at * 4 (E.D.N.Y. Dec. 9, 2015)).

i. *Statutory damages*

District courts are vested with "broad discretion" in determining the amount of statutory damages to be awarded under § 605(e)(3)(C)(i)(II). *J&J Sports Productions, Inc. v. 291*

7

*Bar&Lounge, LLC*, 648 F.Supp.2d 469, 474 (E.D.N.Y. 2009). Under one common method, the "flat-fee" method, the court awards the amount that the establishment would have paid to license the event and broadcast it legally. *J & J Sports Productions Inc v. GPN Bar Inc.*, No. 15-CV-6504, 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017).; *see also J & J Sports Productions, Inc v. LX Food Grocery Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *4 (E.D.N.Y. Nov. 23, 2016). Here, the unrefuted affidavit of Joe Hand, Jr., Plaintiff's President, establishes that the licensing fee for an establishment of El Sonador's size would have been $2,800. (ECF No. 16-5 ¶ 9).[1]

Under another method, the "per-person" method, the Court multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel. *See McAdam*, 2015 WL 8483362, at *4. As this Court has previously commented, however, this approach will almost always overestimate the true amount of damages, because it "is based on [the] speculative and questionable assumption that, had each of the … patrons stayed at home, he or she would have paid the cable provider to … to view the bout." *J & J Sports Productions, Inc. v. Monte Limar Sports Bar Inc.*, No. 15-CV-3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017); *accord El Sonador*, 2017 WL 6397731, at *4; *Right Brain*, 2017 WL 4535928, at *5. Employing the 'per-patron' formula would be doubly speculative in this case because the record is silent as to both the number of patrons at the

---

[1] Plaintiff's motion papers claim, without citation to any documentary evidence, that the "minimum" cost for Defendants to legally purchase the Cotto/Canelo Program was $2,200. (ECF No. 16-1, at 15). No attempt is made to reconcile this number with the $2,800 figure given in the Hand affidavit. Nevertheless, in light of Plaintiff's representation that $2,200 represents the "minimum" figure (ECF No. 16-1, at 15), and affording Plaintiff every favorable inference, as the Court must on a motion for default judgment, *see CA*, 2018 WL 6834472, at *1; *Natale*, 2014 WL 4537501, at *3, the Court finds that $2,800, rather than $2,200, represents the proper value for Plaintiff's lost licensing fee.

restaurant and the residential purchase price of the Cotto/Canelo Program. Although the record suggests that the establishment had a maximum capacity of 50 to 100 persons (ECF No. 16-2, at 3), this says little about the number of people who actually viewed the Program on the night in question. *See J&J Sports Productions, Inc. v. Drake*, No. 06-CV-246, 2006 WL 2927163, at *4 (E.D.N.Y. Oct. 11, 2006) (declining to employ "speculative" estimation of number of patrons based on the establishment's capacity). Furthermore, although some courts in this District have applied a $54.95 to the per-person damage calculation—even where the plaintiff offered no evidence supporting that amount—a cursory review of those cases reveals no authority for that $54.95 figure other than citations to still more cases relying on the same assumption. This Court has previously called attention to the practice of assuming a $54.95 purchase price *ex nihilo*, and need not belabor the objections it has raised elsewhere. *See El Sonador*, 2017 WL 6397731, at *4 n. 3; *Right Brain*, 2017 WL 4535928, at *5 n. 3; *Monte Limar*, 2017 WL 933079, at *4 & n. 4. Suffice it to say, information concerning the true price of a pay-per-view program lies in the custody of the plaintiff, not the defendant; accordingly, the onus must fall on the plaintiff to disclose it if it wishes to avail itself of this form of damages.

For the foregoing reasons, the Court finds that the flat-fee method, rather than the per-patron method, is the appropriate formula to calculate damages in this case. Accordingly, statutory damages will be awarded in the amount of $2,800, the value of Plaintiff's lost licensing fee.

  ii. <u>Enhanced damages</u>

Plaintiff also seeks enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), claiming Defendants' misconduct was willful and for purposes of direct or indirect commercial advantage or private financial gain. There is no direct evidence regarding Defendants' willfulness in

9

misappropriating the Program, but this is only because Defendants have failed to appear in these proceedings and submit to discovery. Fairness would dictate that willfulness should be presumed in cases arising under § 605 where the defendant defaults; "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999). In the improbable event that the infringement was accidental or innocent, the defendant must come forward and explain how it was that plaintiff's broadcast ended up being openly exhibited in their establishment to cover-paying patrons. The defendant should not be permitted to evade this obligation by rejecting this Court's legal process.

This conclusion that Defendants' misappropriation was willful is buttressed by the fact that they are recidivist pirates who have been found liable in this District for Communications Act infringement on a number of occasions. *See El Sonador*, 2017 WL 6397731, at *2 (finding Defendant El Sonador liable); *J & J Sports Productions, Inc. v. El Sonador Café Restaurant Inc.*, No. 15-CV-6934, 2017 WL 598534, at *5 (E.D.N.Y. Jan. 3, 2017) (finding Defendant El Sonador liable), *report and recommendation adopted*, 2017 WL 591169 (E.D.N.Y. Feb. 14, 2017); *J & J Sports Productions, Inc. v. El Sonador Cafe Restaurant, Inc.*, No. 14-CV-7074, 2015 WL 1928757, at *2 (E.D.N.Y. Apr. 28, 2015) (finding both El Sonador and Bernal liable); *J & J Productions, Inc. v. Bernal*, No. 09-CV-3745, 2010 WL 3463156, at *2-*3 (finding both El Sonador and Bernal liable), *report and recommendation adopted*, 2010 WL 3463162 (E.D.N.Y. Aug. 30, 2010). Such repeated and cavalier infringement by these Defendants betrays a complete "disregard for the [Communications Act] and an indifference to its requirements." *J & J Sports Productions, Inc. v. Emily Bar Restaurant Inc.*, No. 15-CV-6499, 2016 WL 6495366,

at *3 (E.D.N.Y. Sept. 27, 2016) (quoting *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)), *report and recommendation adopted*, 2016 WL 6495526 (Nov. 2, 2016).

"To determine whether willful conduct justifies an award of enhanced damages, the court considers 'whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.' " *El Sonador*, 2017 WL 6397731, at *5 (quoting *J & J Sports Productions, Inc. v. Big Daddy's Theme Palace, Inc.*, No. 14-CV-2765, 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015)). Here, Defendants collected a $20 cover charge on the night of the Cotto/Canelo Program at an establishment with an estimated capacity of 50 to 100 persons (ECF No. 16-2, at 2-3), and therefore likely made significant profits through their misappropriation. In addition, they are repeat violators. Judgments in previous lawsuits against Defendants, which have sometimes included substantial enhanced damages, have clearly failed to deter them from committing further violations. *See El Sonador*, 2017 WL 591169, at *1 ($4,452.50, including $2,000 in enhanced damages); *El Sonador*, 2015 WL 1928757, at *1 ($18,385, including $13,488.75 in enhanced damages); *Bernal*, 2010 WL 3463162, at *1 ($5,633.45, including $3,000 in enhanced damages).

Absent special circumstances, enhanced damages are usually calculated by trebling the awarded statutory damages. *See El Sonador*, 2015 WL 1928757, at *4 (citing *Kingvision Pay-Per-View Ltd. v. Keane*, No. 02-CV-5173, 2006 WL 1704474, at *6 (E.D.N.Y. Jun. 16, 2006)). At the same time, "although the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business." *Id.* (citations, internal quotation marks and alterations omitted). Balancing the aggravating factors with the

need to avoid an overly punitive measure of enhanced damages, the Court finds that a 4.5x multiplier is appropriate in this case.

Accordingly, enhanced damages will be awarded in the amount of 4.5 x $2,800 = $12,600.

3. Costs and Fees

Section 605 provides that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

Here, Plaintiff seeks attorneys' fees in the amount of $2,773.00. In support of this relief, Plaintiff submits the affidavit of Julie Cohen Lonstein, Esq., setting forth information about the individuals who worked on the case, the hourly rate billed for each of these individuals, the legal services rendered by them, and the amount of time spent on each service. (ECF No. 16-10 (**"Lonstein Aff."**) ¶¶ 13-14). This particular case required the involvement of Ms. Lonstein, a partner with more than 25 years of relevant experience, as well as associate attorney Christopher J. Hufnagel, Esq. (5 ½ years of experience) and one paralegal/legal assistant (30 years of experience). (*Id.* ¶ 13). Their tasks included attempting to correspond with Defendants, drafting the complaint, preparing affidavits, reviewing advertisements on Facebook and Instagram (presumably to see if Defendants advertised the Program on those platforms), and drafting Plaintiff's notice of default, request for entry of default and motion for default judgment. (*Id.* ¶ 15). The time sheets reproduced in the affidavit are "based upon a compilation of contemporaneous time records kept in the regular course of business." (*Id.*).

Plaintiff's attorneys charged rates of $350/hour for Ms. Lonstein, $275/hour for Mr. Hufnagel, and $95/hour for the paralegal. (*Id.* ¶¶ 13-14). In light of the boilerplate nature of

default judgment cases under § 605, the Court finds that these rates are somewhat excessive. In a recent ruling by Chief District Judge Glenn T. Suddaby in the Northern District of New York, where the Lonstein Law Office, P.C. is located,[2] the Court reduced the hourly rates for Ms. Lonstein's firm to $300 for Ms. Lonstein, $200 for Mr. Hufnagel, and $90 for a paralegal with 25 years of experience. *See Premium Sports, Inc. v. Nichols*, No. 3:17-CV-0741, 2018 WL 3574870, at *9 (N.D.N.Y. Jul. 25, 2018). This Court will adhere to the fee schedule set forth in *Nichols*.

Accordingly, attorneys' fees will be calculated as follows:

|  | Hours | Hourly Fee | Fee |
|---|---|---|---|
| Lonstein | 0.20 | $300 | $300 x 0.20 = $60 |
| Hufnagel | 5.20 | $200 | $200 x 5.20 = $1,040 |
| Paralegal | 13.40 | $90 | $90 x 13.40 = $1,206 |

This yields a total of $2,306 in attorneys' fees.

In addition, Plaintiff seeks costs in the amount of $850, representing $400 in filing fees and $450 for service of process. Plaintiff's service-of-process costs are documented in an invoice from Plaintiff's process server. (ECF No. 16-11). The Court will take judicial notice of the $400 filing fee for this District. *See Big Daddy's Theme Palace*, 2015 WL 58606, at *5. Accordingly, costs are awarded in the amount of $850.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is **GRANTED.** Judgment shall be entered in favor of Plaintiff and against Defendants, jointly and severally, in the amount of **$18,556**, consisting of $2,800 in statutory damages pursuant to 47 U.S.C. §

---

[2] The Lonstein Law Office, P.C. is located in Ellenville, Ulster County, New York.

605(e)(3)(C)(i)(II), $12,600 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $2,306 in attorneys' fees and $850 in costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

SO ORDERED.

Dated: Brooklyn, New York
February 22, 2019

/s/
I. Leo Glasser                    U.S.D.J.